

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00094-CV

Dr. Hector **FARIAS** and Voices in Democratic Action (VIDA),
Appellants

v.

Eduardo A. **GARZA** and Uni-Trade Forwarding, L.C.,
Appellees

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2012-CVT-001496-D1
Honorable Fred Shannon, Judge Presiding[1]

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  January 29, 2014

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART

Appellees, Eduardo A. Garza and Uni-Trade Forwarding, L.C. ("Uni-Trade") (collectively, "the plaintiffs") filed a defamation action against appellants, Dr. Hector Farias and Voices in Democratic Action ("VIDA") (collectively, "the defendants").[2]  The defendants each filed a

---

[1] Sitting by assignment.

[2] The plaintiffs also sued Jose A. Valdez for defamation.  Valdez has not appealed.

motion to dismiss pursuant to the Texas Citizens' Participation Act ("the Act").[3] The trial court denied the motions to dismiss, and this appeal by the defendants ensued.

## BACKGROUND

VIDA is a political watchdog organization and Farias is its spokesperson. Garza is a Laredo businessman and customs broker who has worked in the international trade industry for twenty-five years. Garza owns or has an ownership interest in several U.S. companies, including (1) Uni-Trade, a freight forwarder; (2) Air-Trade Laredo, LLC ("Air-Trade"), an air cargo logistics, transportation, and customs clearing service; and (3) Garros Services, LLC ("Garros Services"), a produce supply chain management service.

In January and August of 2011, the City of Laredo solicited proposals to lease two tracts of unused land at the Laredo International Airport. The City Council later voted unanimously to execute the leases with Uni-Trade and Air-Trade, which were the only companies to submit lease proposals. On October 11, 2011, the City announced a request for proposals "for the management, or management and operation of two refrigerated inspection facilities located within the federal import lots at the World Trade Bridge and Columbia Solidarity Bridge." Three companies submitted proposals: Garros Services, Portable Cold Solutions, and Laredo Facilitators, LLP. On November 28, 2011, the City Council voted (5 to 2) to accept the proposal submitted by Garros Services.

From November 4, 2011, when the bidding closed on the proposals for the refrigerated inspection facilities, through September 2012, Farias and VIDA were publicly critical of the facilities contract and Garza's alleged ties to Laredo political officials. These comments are the focus of Garza's defamation suit and this appeal.

---

[3] Prior to the hearing on the motions, Uni-Trade took a non-suit.

## APPLICATION OF THE ACT

The Texas Legislature enacted the Act[4] "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West Supp. 2013). To achieve these ends, the Legislature provided that if a legal action is brought in response to a person's exercise of certain constitutional rights, that person may move to dismiss the action. *Id.* § 27.003(a). The movant bears the initial burden to show by a preponderance of the evidence that the action "is based on, relates to, or is in response to the [movant's] exercise" of certain rights, including the right of free speech. *Id.* § 27.005(b). Garza concedes the allegations in his lawsuit bring his defamation cause of action within the scope of the Act. Therefore, the burden shifted to Garza as the defamation-plaintiff, and the trial court was required to dismiss his legal action unless he "establishe[d] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). This appeal addresses whether Garza satisfied this burden.

## THRESHOLD ISSUES

### A. Standard of Review

A trial court must dismiss the defamation action unless the party who brought the action "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX. CIV. PRAC. & REM. CODE § 27.005(c). The Legislature's use of the term "prima facie case" implies a minimal factual burden for the plaintiff: "[a] prima facie case

---

[4] The Act is "considered to be anti-SLAPP legislation. SLAPP stands for Strategic Lawsuit Against Public Participation, and approximately twenty-seven states have enacted anti-SLAPP legislation." *Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 521 & n. 1 (Tex. App.—Fort Worth 2012, pet. filed).

represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, No. 01-12-00581-CV, 2013 WL 1867104, at \*6 (Tex. App.—Houston [1st Dist.] May 2, 2013, no pet.). However, the Act requires that the proof offered address and support each element of every claim asserted with clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b), (c). In the context of a motion to dismiss pursuant to the Act, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a).

Garza advocates a standard of review similar to that used to review no-evidence summary judgments. The only court to directly address the standard of review issue was "hesitant" "to embrace the Rule 166a(i) analogy or import into Chapter 27 the 'scintilla of evidence' concept applicable in the context of a no-evidence motion for summary judgment." *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The *Rehak* court explained its hesitation as

> stem[ing] from Chapter 27's distinct terminology. It is doubtful whether Rule 166a(i)'s no-evidence standard meshes with a Chapter 27 mechanism that demands a showing of "clear and specific" evidence—not just "some" evidence—to avoid dismissal. *Compare* TEX. CIV. PRAC. & REM. CODE § 27.005(c) (non-movant must establish "by clear and specific evidence a prima facie case for each essential element of the claim in question" (emphasis added) *with Romo v. Tex. Dept. of Transp.*, 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.) ("When a party moves for a no-evidence summary judgment, the nonmovant must produce some evidence raising a genuine issue of material fact."). The purposeful inclusion of a "clear and specific evidence" requirement indicates that the non-movant must satisfy an elevated evidentiary standard under section 27.005(c). We will follow section 27.005(c)'s express (albeit undefined) terminology and leave the "scintilla" to other contexts.

*Id.*

The Act does not define "clear and specific" evidence; therefore, these terms are given their ordinary meaning. *See TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex.

2011). "Clear" means "free from obscurity or ambiguity," "easily understood," "free from doubt," or "sure." *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, No. 01-12-00990-CV, 2013 WL 3716693, at *6 (Tex. App.—Houston [1st Dist.] July 16, 2013, no pet. h.) (quoting MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 229 (11th ed. 2003)). "'Specific' means 'constituting or falling into a specifiable category,' 'free from ambiguity,' or 'accurate.'" *Id.* (quoting Merriam–Webster's Collegiate Dictionary, at 1198). "Clear and specific evidence has also been described as evidence that is 'unaided by presumptions, inferences, or intendments.'" *Id.* (quoting *Rehak*, 2013 WL 2211654, at *7).

"Prima facie evidence is evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue." *Rehak*, 404 S.W.3d at 726 (quoting *Duncan v. Butterowe, Inc.*, 474 S.W.2d 619, 621 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ)). "In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Id.*; *see also In re Lipsky*, No. 02-12-00348-CV, 2013 WL 1715459, at *4 (Tex. App.—Fort Worth Apr. 22, 2013, orig. proceeding) ("In cases unrelated to motions to dismiss under chapter 27, Texas courts have defined 'prima facie' evidence as the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'").

A determination of whether a party has presented prima facie proof of a meritorious claim is a question of law; therefore, we review the trial court's decision of this issue *de novo*. *Rehak*, 404 S.W.3d at 726. The *de novo* standard also governs our review of the trial court's determination regarding the propriety of dismissal under section 27.005. *Id.* "By the term '*de novo*' we mean that the appellate court makes an independent determination and applies the same standard used by the trial court in the first instance." *Id.*

We conclude the proper standard is to "determine *de novo* whether the record contains a minimum quantum of clear and specific evidence that, unaided by inferences, would establish each

essential element of the claim in question if no contrary evidence is offered." *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Duncan*, 474 S.W.2d at 621; *see also Crazy Hotel Assisted Living*, 2013 WL 1867104, at *6 (examining pleadings and evidence to determine whether plaintiffs marshaled any "clear and specific" evidence to support each alleged element of their causes of action).

### B.     "Claim" v. "Factual Theory"

In its order denying the motions to dismiss, the trial court stated as follows:

> After consideration of said motions [to dismiss], the omnibus response thereto, Plaintiff's first amended petition, and the pleadings, affidavits, and other evidence in the Court's file, the Court is of the opinion that while each statement made by a Defendant may not be actionable standing alone and by itself, the statements by each Defendant, considered in the context in which they were made, establish a prima facie defamation case against each Defendant on each essential element of a defamation claim.

In Garza's third amended petition, Garza raised as "claims" eight "counts" of alleged defamation by Farias and/or VIDA. Garza also raised a civil conspiracy claim against both defendants. There is no question that defamation and civil conspiracy are two different claims.[5] The dispute here centers over the defamation "counts." On appeal, Garza asserts he had to satisfy his burden as to only one "factual theory." In support of the trial court's order, Garza relies on the "gist" rule to argue that all of Farias's statements as a whole are defamatory, even if standing alone they are not. The defendants counter that the trial court's reasoning is inherently inconsistent and is a misunderstanding of the Act. According to the defendants, Garza asserted multiple claims based upon different sets of operative facts that defendants alleged were each independently recoverable. The defendants argue Garza was required to make a prima facie case of each asserted defamation "count." We need not decide this question because, for the reasons set forth below,

---

[5] The civil conspiracy claim is not the subject of this appeal.

we conclude whether taken individually or as a whole, Garza did not satisfy his burden to bring forth a minimum quantum of clear and convincing evidence to establish each essential element of his claim.

## DEFAMATION PER SE

Defamation is characterized as either defamation per se or per quod. *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). "Historically, defamation per se has involved statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish." *Id.* at 63-64. "A statement that injures a person in [his] office, profession, or occupation is typically classified as defamatory per se." *Id.* at 64. "Defamation per quod is defamation that is not actionable per se." *Id.* Garza alleged the following statements by Farias are defamatory per se.

In his affidavit in support of Garza's response to the defendants' motions to dismiss, Jorge Alberto Vera, a Laredo City Council member, stated that between the times the bids were submitted on November 4, 2011, and when the contract was awarded to Garros Services on November 28, 2011, Farias called him numerous times and on one such occasion, "Hector Farias told me that Eduardo Garza's wealth comes from drug money. I cut him off and he never mentioned it again." In his affidavit in support of Garza's response to the defendants' motions to dismiss, Carlos Villarreal, the Laredo City Manager, stated: "On at least two occasions, Dr. Hector Farias has indicated to me over the telephone that Eduardo Garza was involved in the illicit importation and distribution of narcotics. After the most recent occasion that Farias made such remarks, I relayed this information to Eduardo Garza."

On appeal, Farias does not deny making these statements or contend these statements were not defamatory. *See Salinas v. Salinas*, 13-09-00421-CV, 2012 WL 4023331, at *5, n.7 (Tex. App.—Corpus Christi Sept. 13, 2012, no pet.) (defendant called mayor a drug lord; court

concluded an ordinary listener would have understood this statement as accusing mayor of having committed a crime; accordingly, trial court did not err in classifying statement as per se defamatory). Instead, Farias argues there is no evidence of malice.[6]

Even in a defamation per se claim between private parties over a matter of private concern, "there must still be a showing of fault." *Hancock*, 400 S.W.3d at 65 n.7; *McLemore*, 978 S.W.2d at 571 (holding fault "is a constitutional prerequisite for defamation liability"). If the plaintiff is a private figure, the appropriate standard of fault is negligence. *Hancock*, 400 S.W.3d at 65 n.7. Under this standard, the plaintiff must show the defendant knew or should have known the defamatory statement was false. *French v. French*, 385 S.W.3d 61, 73 (Tex. App.—Waco 2012, pet. denied). If the plaintiff is a public or limited-purpose public figure, the appropriate standard of fault is actual malice. *Hancock*, 400 S.W.3d at 65 n.7; *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 119 (Tex. 2000). Actual malice means the defendant published the statement either with knowledge of its falsity or with reckless disregard of whether it was false. *Turner*, 38 S.W.3d at 120.

In both his petition and in his omnibus response, Garza provides no allegation or evidence of either negligence or malice on Farias's part. Instead, Garza simply asserts that because he "is a private plaintiff, Hector Farias is a private Defendant, and engaging in alleged criminal conduct is a private matter, Hector Farias is strictly liable for the damages [Garza] sustained." In his affidavit, Garza states the allegation that he was a "drug dealer" was false. On appeal, Garza cites to several

---

[6] The defendants assert Garza is either a public figure or a limited public figure. Garza asserts he is a private individual. "The distinction between public and private figures matters chiefly because public and limited purpose public figures must prove a defamation defendant acted with actual malice." *Neely v. Wilson*, No. 11–0228, 2013 WL 3240040, at *14 (Tex. June 28, 2013). On the other hand, if the plaintiff is a private individual, the plaintiff need only show the defendant made the defamatory statement with negligence regarding the truth of the statement. *McLemore*, 978 S.W.2d at 571; *see also Neely*, 2013 WL 3240040, at *5. We need not decide this question, however, because regardless of his status Garza did not satisfy his burden to bring forth a minimum quantum of clear and convincing evidence to establish each essential element of his defamation per se claim.

cases for his argument that no minimum level of fault is imposed in private plaintiff/non-media defendant/private matter defamation suits. However, these cases were all decided before the Texas Supreme Court's decision in *Hancock*. Because Garza's pleadings and supporting affidavits do not state a minimum quantum of clear and convincing evidence on the essential element of either negligence or malice as required under *Hancock*, we conclude Garza did not satisfy his burden on his defamation per se claim.

### DEFAMATION PER QUOD

A statement is defamatory if the words tend to injure the plaintiff's reputation, exposing him to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach the person's honesty, integrity, or virtue. TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2012). To qualify as defamatory, a statement should be derogatory, degrading, somewhat shocking, and contain elements of disgrace. *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no pet.). But a communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that only hurts the plaintiff's feelings, is not actionable. *Id.*

Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989); *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654-55 (Tex. 1987). Questions of law are subject to *de novo* review. *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994). Whether a publication is an actionable statement of fact depends on its verifiability and the context in which it was made. *See Bentley v. Bunton*, 94 S.W.3d 561, 580–83 (Tex. 2002). We construe the statement as a whole based upon a reasonable person's perception of it. *Vice v. Kasprzak*, 318 S.W.3d 1, 17 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

**A.  Arms dealer statement**

In an affidavit attached to his amended petition, Garza alleged Farias told Villarreal that Garza "sell[s] weapons in Mexico."  However, in his affidavit, Villarreal never mentions weapons. Instead, he stated as follows:

> On at least one occasion, Defendant Dr. Hector Farias has made a statement in reference to Eduardo Garza that I felt compelled to correct.  Specifically, I explained that [Garza] is a customs broker and one of his clients is the Department of Defense for Mexico.  I said this to discourage Dr. Farias from mischaracterizing the role that [Garza] plays in clearing customs in Mexico for the Mexican government.

On appeal, Farias asserts his statement is not defamatory, but instead, mere rhetorical hyperbole.  An allegedly defamatory publication is construed as a whole in light of the surrounding circumstances based on how a person of ordinary intelligence would perceive it.  *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004).  The appropriate inquiry is objective, not subjective. *Id.* at 157.  We first note, again, that Villarreal does not state Farias told him Garza "sell[s] weapons in Mexico."  Nevertheless, we conclude a person of ordinary intelligence would not construe the alleged statement that Garza "sell[s] weapons in Mexico" in the context of Garza's acting as a customs broker for the Mexico Department of Defense as defamatory.  Accordingly, we conclude Garza did not satisfy his burden as to this alleged comment.

**B.  Other Statements Made by Farias and/or VIDA**

The following alleged defamatory statements are from Garza's Omnibus Response to the defendants' motion to dismiss.

1.  On July 1, 2012, the *Laredo Morning Times* published an article entitled "Businessman's reach is extensive," in which it stated as follows: "Hector Farias, another customs broker critical of the inspection facilities contract, said City Council had given Garza a sweetheart deal that ignored the concerns of the customs broker association."

2.   A publication entitled *LareDos* published an opinion piece written by the publisher entitled "Who is Eduardo Garza and why is City Council so enamored of his wishes?"   The article stated, in part, as follows, with the language about which Garza complains emphasized:

> What Farias really accomplished at the City Council meeting of August 20 — in his effort to discredit Council member Charlie San Miguel as one who has allegedly voted with a conflict of interest — was to throw businessman Eduardo Garza on the table for us to scrutinize and for us to understand how widespread Garza's influence has been in city government.   A generous donor to local political campaigns, including City Council races, Eduardo Garza enjoys a healthy business relationship with the City of Laredo.
>
> . . .
>
> *Farias characterized Garza's ties to the City as "extensive," with all or most of the sitting council and the mayor being recipients of Garza's largesse.   "Once you follow the money, you can see how insidious his efforts are.   He has donated to council members, our Congressman, the sheriff, and the District Attorney," Farias said, adding that the City's contract with Garza's company GARROS to operate the two cold storage inspection facilities . . . was especially freighted with questions.*   [Emphasis added]

3.   The *Laredo Morning Times* published an article entitled "Did Council Member Charlie San Miguel lie so that Uni-Trade owner Eduardo Garza's nephew, Gilberto Garza, could meet minimum job requirements for a Webb County job?"   The article contained an open letter to San Miguel:

> Council Member San Miguel, Clear your name!
>
> Dear Council Member San Miguel: This looks like you lied and got caught.   But perhaps you are being truthful and Gilberto Garza did work for you.   If so, the burden is on you to clear your name.  Show us proof.   Let's see your corporate tax filings, quarterly employer tax filings, W2s, 1099s etc.   All of these documents should support the wages paid by Laredo Accurate Inspections, Inc. to Gilberto Garza.   The clock is ticking.   Should we ask the IRS to look into this?   After all, if he worked for you [sic] six years your records better reflect that you paid him and your share of employer's taxes on his behalf.
>
> It looks like Gilberto Garza lied on his application to Webb County, although it is possible that he lied on his application to the City of Laredo and his application to the county is truthful.   One thing appears certain - since each application lists different employers for the same period of time, one application must be a lie.

Garza alleges VIDA republished the article with the following statement: "Also note that Gilberto Garza worked for the City of Laredo Purchasing Department where he would have had access to information relating to bids. He may have even worked on the scoring criteria for bids. His uncle Eduardo Garza won several bids for city contracts. Makes you wonder doesn't it?"

4. In an interview, in Spanish to a Spanish-language television station, Farias and VIDA complained about the employment of Garza's nephew, Gilberto Garza, as Webb County Facilities Director, and alleged Gilberto was hired because of his uncle. Farias and VIDA also stated, "El tio, pos como saben bien, trae a toda la corte en la bolsa con sus contribuciones," which translates to, "The uncle, as you well know, has the entire court in his pocket with his contributions."

5. Farias and/or VIDA also made the following comments: "The Councilman [Charlie San Miguel] voted for his employer [Eduardo Garza]."; Charlie San Miguel's "boss, [Garza], who has contracts with the city, some of which [Charlie San Miguel] voted for is a big conflict of interest because there is family ties to that."; "Campero is here lobbying for several 40 year contracts that Garza obtained. In view of the scandal they have had at the airport, VIDA requests an investigation to make sure that some of this isn't tied to [indicted airport employee] Humberto Garza . . . if this is not a sweetheart deal where Mr. Garza is going to enjoy those facilities to the year 2052 . . ."; and ". . . everything that VIDA has mentioned about Eduardo Garza is the truth. I would like [them] to name one public official that he has not given money to — that he has not given gifts or favors. Mr. Garza has taken advantage of corrupt officials to place his family in high paying positions."

Freedom of expression upon public questions is secured by the First Amendment. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). Accusations of the use of political influence to gain some benefit from government are not defamatory and do not constitute libel per se. *Bernard v. Grenci*, 853 N.Y.S.2d 168, 170 (N.Y. App. Div. 2008); *see also Lizotte v. Welker*, 709 A.2d 50, 59 (Conn.

Super. Ct. 1996) (considering whether newspaper articles suggesting a developer's contributions to a political committee positively influenced settlement of litigation resulting in approval of his residential development application, could constitute libel by raising an inference of "bribery", court held the statements "contributions to slush funds," "part of the fix," "secret, illegal and corrupt deals," "payoffs," "blatant coverup attempt" and "maneuvers with political and corrupt implications" were examples of rhetorical hyperbole), *aff'd*, 709 A.2d 1 (Conn. 1998).

The Texas Supreme Court has recognized the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on" public figures. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004) (internal citation omitted). And, the U.S. Supreme Court has recognized that "[s]peech does not lose its protected character . . . simply because it may embarrass others or coerce them into action." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982); *see also F.C.C. v. Pacifica Found.*, 438 U.S. 726, 745-46 (1978) (holding, "fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection. For it is a central tenet of the First Amendment that the government must remain neutral in the marketplace of ideas.").

"The Constitution protects statements that cannot reasonably [be] interpreted as stating actual facts about an individual made in debate over public matters in order to provide assurance that public debate will not suffer from lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation." *Bentley v. Bunton*, 94 S.W.3d 561, 578 (Tex. 2002); *Salinas*, 2012 WL 4023331, at *3 (defendant, a self-described community activist, spoke at city council meeting, and addressing plaintiff and council stated "some of you will be judged for the way you have stolen and lied and killed"; court held "an ordinary person hearing [defendant's] remarks would not have understood them as meaning that plaintiff actually engaged in

theft or murder; instead, such a person would have understood the remarks as harsh, acerbic—and possibly unfounded—criticisms of plaintiff's performance as mayor.").

In this case, the challenged statements must be viewed in their context to determine whether a reasonable person would view them as conveying any facts about Garza, because only statements alleging facts, rather than opinions, can properly be the subject of a defamation action. It appears uncontradicted that Garza contributed to the political campaigns of Laredo public officials. And, the award of public contracts is almost always a public matter and an issue of public concern. We believe the statements are not actionable because the facts upon which the allegedly defamatory statements were based are set forth in the statements as a whole and it is clear to a reasonable reader/listener that the accusations are merely opinion and personal surmise built upon those facts. Farias's statements may have been caustic, abusive, unflattering, and offensive, but we conclude as a matter of law that they were not defamatory either individually or as a whole.

### CONCLUSION

For the reasons stated above, we conclude the trial court erred in denying the defendants' motions to dismiss. Therefore, we reverse the trial court's order and render a dismissal of all defamation claims brought by Garza.

When a legal action is dismissed pursuant to the Act, "the court shall award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." TEX. CIV. PRAC. & REM. CODE § 27.009(a). Therefore, we remand this cause to the trial court for consideration of an award of attorney's fees, costs, and/or sanctions to defendants pursuant to section 27.009.

Sandee Bryan Marion, Justice