**Reversed, Rendered and Remanded; Opinion Filed May 28, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00853-CV

**BARBARA SOULES YOUNG AND AMY GANCI, Appellants**
**V.**
**ROBERT AND HOLLIE KRANTZ, Appellees**

### On Appeal from the 68th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-13-04768

## OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Bridges

Appellants Barbara Soules Young ("Young") and Amy Ganci ("Ganci") appeal from the trial court's denial of their motion to dismiss. In a single issue, appellants contend the trial court should have granted their motion to dismiss pursuant to chapter 27 of the Texas civil practice and remedies code, the Texas Citizens Participation Act ("TCPA"). For the reasons expressed in this opinion, we reverse the trial court's order, render judgment granting appellants' motion to dismiss pursuant to the TCPA, and remand this case to the trial court for further proceedings consistent with section 27.009(a) of the Texas civil practice and remedies code.

### Background

In 2010, Young hired an architect to design an outdoor living space as an addition to her home. Young then contacted Perennial Properties GC, LLC ("Perennial") to obtain a quote to build the outdoor living space. Young met with appellee Robert Krantz ("Krantz"), who

indicated he was the owner of Perennial. In June of 2011, Young and Krantz, on behalf of Perennial, entered into the "Contract Home Deck Addition," which outlined the construction to be performed by Perennial and the payments to be made by Young.

Appellants allege Perennial failed to comply with the agreed-upon plans. For example, they contend: (a) Perennial did not perform the services timely; (b) Krantz or his workers left materials on Young's property and her neighbor's property; (c) the materials used were of poor quality; (d) Perennial failed to obtain the proper permits; and (e) Perennial abandoned the job before completion.

On September 15, 2011, Young received a letter from McKinney Lumber Company ("MLC"), stating Perennial failed to pay MLC $9,779.90 for lumber that was delivered to Young's address in July and August 2011. On October 14, 2011, MLC filed a lien affidavit and claim for mechanic's and materialman's lien against Young's property, which is alleged to have had a negative impact on Young's credit.

On October 12, 2012, MLC filed a lawsuit ("Underlying Lawsuit") against Perennial and Young, seeking payment for lumber and materials purchased by Perennial for Young's outdoor addition. Appellant Ganci is the attorney representing Young in the Underlying Lawsuit. On December 19, 2012, Young filed counterclaims against MLC, Perennial, Krantz and Hollie Krantz, alleging, in part, that Perennial's work was substandard.

On January 30, 2013, Young, with the assistance of Ganci, prepared an Angie's List review ("Review") regarding Young's experience with appellees and Perennial. The Review, titled "Outdoor Living Space Nightmare−Shoddy Untimely Work and Failure to Pay Materials," gave Perennial an overall grade of "F." In response to the Review, appellees filed a petition in intervention in the Underlying Lawsuit asserting claims against appellants for defamation and intentional infliction of emotional distress.

Pursuant to the TCPA, on March 22, 2013, appellants filed a motion to dismiss the claims asserted against them by appellees. After a hearing on April 22, 2013, the trial court denied appellants' motion to dismiss and severed the claims filed by appellees against appellants from the Underlying Lawsuit.

## Analysis

In their sole issue on appeal, appellants argue the trial court erred by denying their motion to dismiss under the TCPA, because they were exercising their right to free speech in posting the Review. Appellees respond that the TCPA does not apply to the Review because the Review was defamatory per se.

### *Standard of Review*

The issue in this case is whether the TCPA applies to appellants' Review on Angie's List. We review questions of statutory construction de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. TEX. GOV'T CODE ANN. §312.005 (West 2005); *Molinet*, 356 S.W.3d at 411. "We look first to the statute's language to determine that intent, as we consider it 'a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.'" *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999)); *see also Molinet*, 356 S.W.3d at 411. We consider the statute as a whole rather than focusing upon individual provisions. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). If a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results. *Id.* (citing *Tex. Dep't of Protective and Regulatory Servs. v. Mega Child Care*, 145 S.W.3d 170, 177 (Tex. 2004)).

*Applicable Law*

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. §27.002; *see also* TEX. CONST. Art. 1, §8 ("Every person shall be at liberty to speak, write or publish his opinions on any subject. . . ."). The TCPA is to be "construed liberally to effectuate its purpose and intent fully." *Id.* at §27.011(b).

The TCPA provides a means for a defendant, early in the course of a lawsuit, to seek dismissal of certain claims identified in the TCPA, including a legal action based on, relating to, or in response to a party's exercise of the right to free speech. *Id.* at §27.003(a). "Exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." *Id.* at §27.001(3). "Matter of public concern" includes an issue related to (1) health or safety; (2) environmental, economic, or community well-being; (3) the government; (4) a public official or public figure; or (5) a good, product, or service in the marketplace. *Id.* at §27.001(7).

When a court orders dismissal of a legal action under the TCPA, the court shall award to the moving party (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require, and (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions. *Id.* at §27.009(a).

*Applicability of the TCPA to the Angie's List Review*

To be entitled to a dismissal under the TCPA, appellants were required to establish by a preponderance of the evidence that appellees' defamation and intentional infliction of emotional distress claims are based on, relate to, or are in response to appellants' exercise of the right of

free speech. *Better Bus. Bureau of Metropolitan Dallas v. BH DFW, Inc.*, 402 S.W.3d 299, 307 (Tex. App.−Dallas 2013, pet. denied). Specifically, appellants were required to establish by a preponderance of the evidence that the Review was a communication made in connection with a good, product, or service in the marketplace. TEX. CIV. PRAC. & REM. CODE ANN. §§27.001(3), 27.001(7)(E).

The evidence before us shows that on January 20, 2013, Young, with the assistance of Ganci, posted the Review on Angie's List, which expressed Young's opinion regarding her experience with Perennial and appellees. As noted above, the Review gave Perennial an overall rating of "F" and the comments section of the Review stated as follows:

> Homeowner hired this company through Robert Krantz, its principal, to construct an exterior deck living space onto a residential homestead. Krantz bid the job at $33,684.00 and the parties entered into a written contract in June 2011. Krantz promised to complete the deck by August, 2011 and agreed to build the deck according to plans that the homeowner had paid an architect and engineer to design. Krantz took the homeowner's money and ordered the wrong materials for the project, but had the framer construct a structure anyway, failing to connect columns and beams in a safe fashion or as designed by the engineer. The framer reports that he was told by Krantz not to do the connections as designed because it was too expensive. Krantz would disappear for weeks at a time and would try and satisfy the homeowner by sending over an undocumented worker, Walter, to slap paint around and act like work was being performed. Krantz used substandard materials not specified in the plans and failed to credit the homeowner for the significant difference in value of the products−particularly roof, railing and skylight materials. Krantz did not supply workers with a port-a-potty as required in the parties contract and the homeowner was forced to allow strange workers−many believed to be undocumented −into her home to use bathroom facilities, as opposed to having them urinate. etc. outdoors on her property. Krantz failed to keep the property cleaned up during the project and even allowed lumber to sit on a neighbor's driveway until the homeowner paid to have it moved. Krantz was paid through framing although he failed to obtain a framing inspection as agreed. The homeowner then learned he had only obtained a permit from the City of Dallas for a $6,000.00 deck addition and not the $33,684.00 outdoor living space contracted for. After paying according to the contract through the framing, the homeowner received a Notice of Intent to File Lien from McKinney Lumber Company, LLC, which claimed Perennial had ordered lumber in July and not paid the July invoice in accordance with Texas prompt pay laws and statutes governing use of construction trust funds. Despite promises and misrepresentations by Hollie Krantz that they "always paid their bills" and that this was simply a form letter, McKinney Lumber was not paid by Krantz and did

put a lien on the homeowner's residential homestead and has since sued Perennial and the homeowner for payment. The homeowner has determined that Krantz over ordered lumber—there was actually only approximately $6,000.00 in lumber used on her project, but the McKinney Lumber lien is for over $9,800.00. The homeowner then learned that instead of embedding the huge support columns into the concrete piers as called for in the plans, they had been nailed onto an untreated piece of wood resting on the concrete. Instead of one single support beam across the columns as called for in the plans and agreement, Krantz pieced together 2x10 lumber that appears to have been left over from another job, leaving exposed joints on the top of the support columns. Krantz then used heavy iron brackets at these joints, but instead of running through bolts to stabilize the heavy structure, he used small lag bolts and drove most of them into the joints as opposed to the wood. The homeowner spent thousands extra to have her architect and engineer design a solution and had to hire another contractor to finish the work.

The homeowner has learned that contrary to Texas law, which requires that a contractor maintain a separate construction account if he contracts with the owner of a residential homestead and is contracting for more than $10,000, Krantz commingled the homeowner's construction payments into a general account and never maintained an account record for her project—all in violation of the Texas Property Code, Chapter 162 which creates a fiduciary relationship between the subs, vendors. homeowner and contractor and requires the contractor to not divert construction money paid which are considered trust funds. Krantz abused the monies paid to him by the homeowner, was always away on vacation and when he did come to the property, would leave his truck running and stay only moments. From check records received from Perennial, Krantz was using the homeowner's money to pay for work on other jobs. Subs on the project report that Krantz owes them money—this includes the concrete supplier, the gutter company, and the framer—and of course McKinney Lumber which was not paid a penny even though lumber was the primary material used in constructing the deck and was advanced by the homeowner under the terms of the payment schedule in the contract. The homeowner has been told by certain subs that Hollie and Robert Krantz were building a home on Lake Texoma and pilfering materials and labor from jobs. One check Krantz claims was paid for work on the homeowner's property shows him reimbursing an undocumented worker almost $50 for gas and making loans from homeowner's construction funds—why would a sub need to be reimbursed for gas on a residential construction project in Dallas?

The project has been a complete nightmare for the homeowner, who has been sued by McKinney Lumber and had her impeccable credit ruined. When she paid the concrete supplier directly because he complained to her he had not been paid, Hollie Krantz wrote her an email accusing "I did not know you were in bed with Don Phillips." This was very troubling and shocking to the 72 year old homeowner. The lack of care and shoddy construction of the huge deck structure continues to be a nightmare for the homeowner who will never enjoy the living space she paid to have so meticulously designed and engineered. When Krantz had interviewed for the job, the homeowner had made clear that safety was the

primary goal because a good friend's daughter had died in Chicago in the deck collapse in 2003 in Lincoln Park.

In the early phases of the construction, the Krantzs duped the homeowner into believing they were such good Christian people, asking if their children could tour the homeowners pretty gardens and excusing lateness by saying "I was playing Jesus in the summer bible school program." Sickening!

Watch out for the contract−Krantz's contract did not contain the mandatory notice about the Residential Construction Liability Act ("RCLA"). When the homeowner hired a lawyer and tried to get Krantz to come fix the defective and cheap work, he instead hired a lawyer who said "Gottcha"−you did not send us your demand by "certified mail, return receipt requested." The homeowner had no idea about the RCLA. But regardless, still has a lien on her homestead!

This couple is very capable of sucking you in! They do not come off as crooks, but they will take your money and misrepresent the facts about their subs and your job. Robert Krantz knows nothing about construction and was completely dumbfounded when meeting with the architect and engineer to try and fix the damage caused by not following the plans−like a deer in the headlights−he had no clue. The homeowner has learned he didn't even show the plans to most of the subs who worked on the project. The Krantzs never did anything on time and sent invoices knowing work had not been performed as agreed and that they had used substandard and cheaper materials than bid. It would be a shame if they subjected anyone else to this horrid nightmare.

In their amended response to the motion to dismiss, appellees specifically cited the trial court to the last paragraph of the comments section of the Review as being defamatory.

Here, appellants established by a preponderance of the evidence that they were exercising their right to free speech by communicating to the public their Review of Perennial and appellees. *See Better Bus. Bureau*, 402 S.W.3d at 308 (concluding the BBB was exercising its right to free speech by communicating to the public its business review of BH DFW, including an "F" rating). We conclude the Review related to a good, product, or service in the marketplace and, therefore, under the statutory definition, related to matter of public concern; we also conclude the communication of the Review was an exercise of appellants' right to free speech as defined by the TCPA. *See id.* (citing *Avila v. Larrea*, 394 S.W.3d 646, 657 (Tex. App.−Dallas

2012, pet. denied); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living Ltd.*, 416 S.W.3d 71, 81 (Tex. App.−Houston [1st Dist.] 2013, pet. denied)).

Further, in their petition in intervention, appellees stated their claims for defamation and intentional infliction of emotion distress were filed as a result of appellants' "false statements posted on Angie's List." Therefore, the claims were filed in response to appellants' exercise of the right to free speech as required by the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. §27.003(a).

### Burden Shift

Because appellants established the Review fell within the scope of the TCPA, the burden then shifted to appellees to establish by clear and specific evidence a prima facie case for each essential element of their claims. TEX. CIV. PRAC. & REM. CODE ANN. §27.005(c). The TCPA provides no guidance as to the quantum of proof necessary to constitute clear and specific evidence of a prima facie case for each essential element of a claim. *See id.*; *Better Bus. Bureau*, 402 S.W.3d at 309. The legislature's use of the term "prima facie case" implies a minimal factual burden for the plaintiff: "[a] prima facie case represents the minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *See Newspaper Holdings*, 2013 WL 1867104, at *6. However, the Act requires the proof offered address and support each element of each and every claim asserted with clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. §27.005(b), (c). *See also Farias v. Garza*, No. 04-13-00094-CV, 2014 WL 300983, at *2 (Tex. App.−San Antonio Jan. 29, 2014, pet. filed). Further, the statute does require the trial court to "consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE ANN. §27.006(a). The purposeful inclusion of a "clear and specific

evidence" requirement, therefore, indicates that the non-movant must satisfy an elevated evidentiary standard under section 27.005(c). *See Farias*, 2014 WL 300983, at \*2.

*1.    Defamation*

Applying this standard, we first turn to appellees' defamation claim. To maintain a defamation cause of action against appellants, appellees were required to prove appellants (1) published a false statement; (2) that was defamatory; (3) while acting with negligence regarding the truth of the statement. *See Avila*, 394 S.W.3d at 657. A statement is "defamatory" if it "tends to injure a living person's reputation" and results in financial injury to that person. *See* TEX. CIV. PRAC. & REM. CODE ANN. §73.001. A statement may be false, abusive, unpleasant, or objectionable without being defamatory in light of the surrounding circumstances. *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.−2003, no pet.). Whether a statement is capable of a defamatory meaning is initially a question of law for the court. *See Gumpert v. ABP Freight Sys., Inc.*, 293 S.W.3d 256, 264 (Tex. App.−Dallas, 2009, pet. denied).

Appellees' sole argument in their brief contends they "[do] not have to prove that they suffered damage to their reputation or any monetary loss," because the Review is defamatory per se.[1] "Historically, defamation per se has involved statements that are so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including for loss of reputation and mental anguish." *Hancock v. Variyam*, 400 S.W.3d 59, 63 (Tex. 2013). Even in a defamation per se claim between private parties over a matter of private concern, "there must still be some showing of fault." *See id.*; *Farias*, 2014 WL 300983, at \*4. If the plaintiff is a private figure, the appropriate showing of fault is negligence. *See Hancock*, 400 S.W.3d at 65 n. 7. Under this standard, the plaintiff must show the defendant knew or should have known the

---

[1] At the conclusion of their brief, appellees make brief allegations that the Review referenced their financial records in violation of a protective order and that the Review makes claims of fraud and uncharged criminal activity. However, appellees fail to point out to this Court where these references purportedly are made or provide any further explanation or argument. Therefore, we need not address them in this opinion. See TEX. R. APP. P. 38.1.

defamatory statement was false. *French v. French*, 385 S.W.3d 61, 73 (Tex. App.−Waco 2012, pet. denied).

Only statements alleging facts, rather than opinions, can properly be the subject of a defamation action. *See Farias*, 2014 WL 300983, at *8; *Avila*, 394 S.W.3d at 658. An expression of opinion is protected free speech. *See Yiamouyjannis v. Thompson*, 764 S.W.2d 338, 340 (Tex. App.−San Antonio, 1988, writ denied). Moreover, to be actionable, a statement must assert an objectively verifiable fact rather than an opinion. *See Main v. Royall*, 348 S.W.3d 381, 389 (Tex. App.−Dallas 2011, no pet.). We classify a statement as fact or opinion based upon the statement's verifiability and the entire context in which the statement was made. *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002). Whether a statement is a fact or opinion is also a question of law. *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 903 (Tex. App.−Dallas 2006, no pet.). In Young's affidavit attached to appellants' motion to dismiss, she states: "I posted a review on Angie's List that describes *my experience* with the Krantzes and Perennial." (emphasis added). She then attached a copy of the Review for the trial court.

But more importantly, in their amended response to the motion to dismiss, appellees only attempted to present evidence, through their affidavits, as to why the statements made in the Review were false. They did not present evidence as to the second and third prongs of defamation (i.e., that the false statement was defamatory and appellants acted with negligence regarding the truth of the statement). *See Avila*, 394 S.W.3d at 657. Appellees have, therefore, failed to meet their burden of establishing by clear and specific evidence a prima facie case *for each essential element* of their claim for defamation.[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. §27.005(c) (emphasis added).

---

[2] In their amended response to the motion to dismiss, appellees argue Ganci was negligent regarding her statements in the Review because the appellees never provided any work to her. We conclude this argument is without merit, since it is clear from the record that Ganci was acting

*2.* *Intentional Infliction of Emotional Distress*

We next turn to appellees' claim for intentional infliction of emotional distress. To recover for intentional infliction of emotional distress ("IIED"), a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). However, the tort of IIED is a "gap-filler" tort which was created for the "limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004); *Rico v. L-3 Commc'n Corp.*, 420 S.W.3d 431, 441 (Tex. App.−Dallas 2014, no pet.). The tort's clear purpose is to supplement existing forms of recovery by providing a cause of action for egregious conduct that might otherwise go unremedied. *See id.* The tort of IIED simply has no application when the actor intends to invade some other legally protected interest, even if emotional distress results. *See id.* Thus, where the gravamen of a complaint is another tort, IIED is not available as a cause of action. *See Moser v. Roberts*, 185 S.W.3d 912, 915 (Tex. App.−Corpus Christi 2006, no pet.) (citing *Hoffman*, 144 S.W.3d at 447-48).

Here, the facts that form the basis of the claim for IIED are the same as those that form the basis for appellees' defamation claim. Appellees do not refer this Court to additional, unrelated facts in the record that support an independent claim for IIED. Because we have already determined appellees have failed to meet their burden of establishing by clear and

as an agent on behalf of Young when assisting Young in the preparation of the Review. *See In re George*, 28 S.W.3d 511, 515 (Tex. 2000) (the attorney is the agent of the client).

specific evidence a prima facie case for each essential element of their claim for defamation, appellees' claim for IIED must likewise fail. *See Hoffman*, 144 S.W.3d at 447.

## Conclusion

Because the TCPA applied to appellees' claims against appellants and because appellees failed to establish by clear and specific evidence a prima facie case for each essential element of their claims for defamation and intentional infliction of emotional distress, the trial court erred by denying appellants' motion to dismiss under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. §27.005(c); *Better Bus. Bureau*, 402 S.W.3d at 312. We, therefore, reverse the trial court's order, render judgment dismissing this case pursuant to the TCPA, and remand this case to the trial court for further proceedings consistent with section 27.009(a) of the civil practice and remedies code. *See id.* at §27.009(a).

/David L. Bridges/
130853F.P05
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BARBARA SOULES YOUNG AND AMY GANCI, Appellants

No. 05-13-00853-CV      V.

ROBERT AND HOLLIE KRANTZ,
Appellees

On Appeal from the 68th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-13-04768.
Opinion delivered by Justice Bridges.
Justices Fillmore and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that appellants' motion to dismiss pursuant to the TCPA is granted. We **REMAND** to the trial court for further proceedings consistent with section 27.009(a) of the Texas civil practices and remedies code.

It is **ORDERED** that appellants BARBARA SOULES YOUNG AND AMY GANCI recover their costs of this appeal from appellees ROBERT AND HOLLIE KRANTZ.

Judgment entered May 28, 2014

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE