# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00643-CV

**Karen Neyland, Susan Sinclair, Phyllis Watts, and Connie Causin, Appellants**

**v.**

**Nancy Thompson, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-13-001409, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Karen Neyland, Susan Sinclair, Phyllis Watts, and Connie Causin challenge the trial court's denial of their motions to dismiss pursuant to the Texas Citizens Participation Act (TCPA or the Act), which provides for dismissal of actions involving the exercise of certain constitutional rights. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. Appellants contend that Nancy Thompson filed her lawsuit in response to their exercise of the rights of association and free speech. *See id.* § 27.001(2), (3). Appellants further contend that Thompson failed to respond with clear and specific evidence showing a prima facie case for each essential element of her claims as required to avoid dismissal under the TCPA. *See id.* § 27.005(c). For the reasons that follow, we affirm in part and reverse and dismiss in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants are residents of Sunchase Condominiums, located in Austin, Texas, and members of the Sunchase Homeowners Association, Inc. (HOA). Thompson was the property manager for the HOA. Beginning in 2011, Appellants began to express dissatisfaction with Thompson's performance as property manager. Thompson contends that Appellants stated in writing and orally that she misappropriated HOA funds, committed fraudulent activities with the president of the HOA board of directors, and has been fired from prior property management jobs for mismanagement of funds. The comments giving rise to this action were made in emails between Watts, Sinclair, and a nonparty member of the HOA; in flyers and a petition Appellants distributed to HOA members; at an HOA meeting; and to a television reporter. In 2013, Thompson filed suit against Appellants alleging libel per se and slander per se.[1] Appellants filed motions to dismiss under the TCPA contending that Thompson's claims are based on, relate to, or are in response to their exercise of the right of association and the right of free speech concerning matters of public concern.[2] *See id.* § 27.001(2), (3). Following a hearing, the trial court denied the motions without stating a basis. This appeal followed.

## TCPA DISMISSAL MECHANISM AND STANDARD OF REVIEW

The TCPA is an "anti-SLAPP" statute that permits defendants targeted by "Strategic Lawsuits Against Public Participation" or SLAPP suits to move for dismissal if the action "is based

---

[1] Thompson also sued a fifth person whom she subsequently nonsuited.

[2] Neyland, Sinclair, and Watts filed a joint motion. Causin filed a separate motion.

2

on, relates to, or is in response to [the defendant's] exercise of the right of free speech, right to petition, or right of association . . . ." *See id.* § 27.003(a). The "'[e]xercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). The Act defines "the exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "matter of public concern" includes, relevant to this appeal, issues relating to "community well-being," or a "service in the marketplace." *Id.* § 27.001(7)(B), (E). A "'[c]ommunication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

In enacting the TCPA, the legislature explained that its purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002. The legislature also directed courts to construe the Act "liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b). This Court has construed the Act to encompass broader activity than simply participation in governmental issues.[3] *See Combined Law Enforcement Ass'n of Tex. v. Sheffield*,

---

[3] Our sister courts have construed the TCPA similarly. *See Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80–81 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (applying TCPA to claims for defamation, business disparagement, and tortious interference with contract against newspaper and source); *Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 308 (Tex. App.—Dallas 2013, pet. denied) (although stated statutory purpose is to protect participation in government, Act defines protected activity more broadly); *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 353–54 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (mem. op.) (rejecting argument that phrase "otherwise participate in government" limits protection to "subclass of . . . communications"

No. 03-13-00105-CV, 2014 Tex. App. LEXIS 1098, at *6 n.1 (Tex. App.—Austin Jan. 31, 2014, pet. filed ) (mem. op.) ("There is nothing in the plain language of the statute that limits its scope . . . solely to public participation in government."); *Kinney v. BCG Att'y. Search, Inc.*, No. 03-12-00579-CV, 2014 Tex. App. LEXIS 3998, at *21 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (op. on reh'g) (applying TCPA to claims for breach of contract and fiduciary duty, violations of Lanham Act, and defamation based on online statements concerning services in marketplace); *see also* Senate Comm. on State Affairs, Bill Analysis, Tex. HB. 2973, 82d Leg., R.S. (2011) (Author's/Sponsor's Statement of Intent) ("Whether petitioning the government, writing a traditional news article, or commenting on the quality of a business, involvement of citizens in the exchange of ideas benefits our society."). In determining whether to dismiss an action, the trial court must consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006.

The Act employs a burden-shifting mechanism, and the court's inquiry is a two-step process. *See KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 723 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The defendant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, relates to, or is in response to his exercise of the right of association, free speech, or petition. Tex. Civ. Prac. & Rem. Code § 27.005(b); *Farias v. Garza*, 426 S.W.3d 808, 813 (Tex. App.—San Antonio 2014, pet. filed); *Whisenhunt v. Lippincott*, 416 S.W.3d 689, 695 (Tex. App.—Texarkana 2013, pet. filed); *Rehak*,

directed only toward government).

4

404 S.W.3d at 723. If the defendant meets this burden, the trial court must dismiss the action unless the plaintiff "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."[4] Tex. Civ. Prac. & Rem. Code § 27.005(b), (c); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied; *Rehak*, 404 S.W.3d at 723–24. The Act does not define "clear and specific" or "prima facie case." *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *Robinson*, 409 S.W.3d at 689.

The first step of the inquiry—determining whether the TCPA applies—is a legal question that we review de novo. *City of Rockwell v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *Newspaper Holdings*, 416 S.W.3d at 80; *Robinson*, 409 S.W.3d at 688; *Rehak*, 404 S.W.3d at 725; *see Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 304 (Tex. App.—Dallas 2013, pet. denied) (whether TCPA applies is question of statutory construction we review de novo). "The legislature's use of the term 'prima facie case' in the second step implies a minimal factual burden [for the plaintiff]." *Newspaper Holdings*, 416 S.W.3d at 80. "The prima facie standard requires only the 'minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true.'" *In re E. I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (per curiam) (quoting *Texas Tech Univ. Health Scis. Ctr. v. Apodaca*, 876 S.W.2d 402, 407 (Tex. App.—El Paso 1994, writ denied)); *see Farias*, 426 S.W.3d

_____

[4] In 2013, the legislature amended the TCPA so as to make the inquiry a three-step process. *See* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 2, sec. 27.005(d), 2014 Tex. Gen. Laws 2499, 2499 (codified at Tex. Civ. Prac. & Rem. Code § 27.005(d)) (court shall dismiss if, after plaintiff presents prima facie case of each essential element of claim, defendant establishes by preponderance of evidence each essential element of defense). However, Appellants do not rely on section 27.005(d), and we do not consider whether the amendment applies to this case.

at 813; *Robinson*, 409 S.W.3d at 688; *Sheffield*, 2014 Tex. App. LEXIS 1098 at *27. Prima facie evidence is evidence that will suffice as proof of a fact in issue until its effect is overcome by other evidence. *Farias*, 426 S.W.3d at 814; *Rehak*, 404 S.W.3d at 726 (citing *Duncan v. Butterowe, Inc.*, 474 S.W.2d 619, 621 (Tex. Civ. App.—Houston [14th Dist.] 1971, no writ)). "'In other, words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party.'" *Farias*, 426 S.W.3d at 814 (quoting *Rehak*, 404 S.W.3d at 726). A determination of whether a party has presented prima facie evidence of a meritorious claim is a question of law that we review de novo. *Farias*, 426 S.W.3d at 814; *Rehak*, 404 S.W.3d at 726.

Because the TCPA does not define "clear and specific," we give those terms their ordinary meanings. *See TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011); *Farias*, 426 S.W.3d at 813–14; *Robinson*, 409 S.W.3d at 689. "Clear" means "free from doubt," "sure," or "unambiguous." Black's Law Dictionary 287 (9th ed. 2009); *see Farias*, 426 S.W.3d at 814; *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (mem. op.). "Specific" means "explicit," or "relating to a particular named thing." Black's Law Dictionary 1528; *see Farias*, 426 S.W.3d at 814; *John Moore Servs.*, 441 S.W.3d at 355. This Court has concluded that "[t]he characterization of the evidence needed to support the prima facie case as 'clear and specific' does not alter the burden or cause it to exceed a preponderance of the evidence." *Sheffield*, 2014 Tex. App. LEXIS 1098 at *27–28. Rather, the term "clear and specific" refers to the quality of the evidence, while the term "prima facie case" refers to the amount of evidence required. *See id.*; *In re DuPont*, 136 S.W.3d at 223. Therefore, the proper standard of review as to the second step of the inquiry is to determine de

6

novo whether the record contains the minimum quantum of clear and specific evidence necessary to support a rational inference as to each essential element of the claim in question if no contrary evidence is offered. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *In re DuPont*, 136 S.W.3d at 223; *Farias*, 426 S.W.3d at 814.

## ALLEGEDLY DEFAMATORY COMMUNICATIONS

Thompson contends that Appellants made defamatory statements about her to Sunchase residents in emails, flyers, a petition, and oral statements and to a television news reporter in oral statements.

### Emails to Sunchase Homeowners

The record contains an email chain between HOA board member Lisa Mims, Sinclair, and Watts. In the emails, Watts states that she has "concerns . . . with this situation" and that the "ball is in Lisa's court" to "do the right thing." Sinclair states that they "are just going to be in a holding pattern for awhile" and that she "just wanted [Thompson] to shake in her boots."

### Flyers and Petition Distributed to Sunchase Homeowners

The evidence includes two flyers addressed to Sunchase homeowners. One undated flyer refers to recent "discussion and publicity" concerning "possible misappropriation of funds" by property management, "the possibility of fraudulent activity" between the HOA board president and property manager, the "incompetence" of property management, and "blatant breaches of her contract and Sunchase By-Laws" by the property manager. It also includes the statement that "[t]he cause for this chaos is the past board and property management's incompetence, misappropriation

7

of funds and frivolous disregard for the law . . . ." The second flyer, dated June 21, 2012, states that "our current management company has been fired from 3 other condominium associations for mismanagement of funds and in one case, a condominium Board sued to get their money back and won." The first flyer is anonymous, and the second is signed only "Your concerned neighbors of Sunchase," but affidavit testimony establishes that Causin distributed flyers to Sunchase residents, and Neyland, Sinclair, and Watts do not dispute their alleged responsibility for the flyers. Thompson's uncontradicted affidavit also shows that Appellants brought a petition to the April 2012 HOA meeting seeking Thompson's termination and stating that she had failed to comply with the Sunchase Condominium Bylaws' requirement that an annual audit be performed.

**Oral Statements to Sunchase Residents**

Thompson offered three affidavits in which Sunchase HOA members state that in an October 2012 HOA board meeting and on "multiple other occasions," Appellants "called Nancy Thompson a thief," "accused her of stealing Association money," and stated that she has been "fired from previous property management jobs for misappropriating funds."

**Oral Statements to Television Reporter**

In May and June 2012, a local television station carried at least two stories covering the management dispute at Sunchase Condominiums. In the televised reports, statements were attributed to Neyland, Sinclair, and Watts. Their affidavits include the following quotes from the televised report:

8

"They [the property manager and the HOA Board] will not respond to us," said Karen Neyland, a 31-year[-old] Sunchase homeowner. . . . Neyland said that the HOA Board members have been uncooperative.

"This is just not right. Something is wrong," said Karen Neyland, who lives at Sunchase and pays HOA dues.

Former Board members said that they were under the impression that audits were being done. In an email from Thompson to former Board member Susan Sinclair on August 24, 2011, Thompson clearly states that the "2008 and 2009 audits are being done." "I really wish I knew exactly what was going on," Sinclair said. "We may never know."

"We wanted to [vote] [at the HOA member meeting called to consider replacement of the Board], but everybody was quashed," said condo owner Susan Sinclair. "The whole Board said they would resign tonight if that's what we voted on, but they never let us vote."

"Well something's going on," says Phyllis Watts, another former Sunchase Board member. "And I hope to find out what it is."

Later, Sunchase homeowner Phyllis Watts said "you can't get anything from the Board members now. They don't want to give anything out, any information at all."

Appellants aver that these statements appear to be substantially accurate recitations of the statements they gave and are fairly representative and typical of the statements they made concerning the dispute.

## APPLICABILITY OF THE TCPA

Appellants contend they established that Thompson's claims are based on, relate to, and are in response to their exercise of the right of association and the right of free speech on matters of public concern, specifically issues relating to community well-being and Thompson's services in

the marketplace. *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(B), (E).[5] The parties' affidavits and attachments show that the allegedly defamatory statements, with the exception of those made to the television reporter, were made between or among members of the Sunchase HOA. The evidence shows that HOA members share common interests, such as ownership of the Sunchase "Common Elements" and "Common Expenses." Thus, in the TCPA's terms, these communications were between individuals who joined the Sunchase HOA to collectively express, promote, or defend their common interests as Sunchase homeowners. *See* Tex. Civ. Prac. & Rem. Code § 27.001(2). The record therefore shows by a preponderance of the evidence that Thompson's suit against Appellants for defamation through these statements made to HOA members is based on, relates to, or was in response to communications made in the exercise of the right of association. *See id.* § 27.005(b)(3); *Sheffield*, 2014 Tex. App. LEXIS 1098, at *13–14 (concluding action based on communications between and among members of law enforcement union was based on, related to, or was in response to exercise of right of association under TCPA); *cf. Cheniere Energy, Inc. v. Lofti*, 449 S.W.3d 210, 214–15 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (appellants who asserted that communications between attorney and corporate client established constitutional right of association but provided no evidence they had any communications or acted in furtherance of common interest

---

[5] The TCPA also includes an issue related to "a public figure" in the definition of "a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(D). Appellants argue that Thompson is a limited-purpose public figure but do so only in the context of the proof required to show defamation. *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (plaintiff who is public official must show defendant acted with actual malice and not mere negligence as with private individual). They do not rely on section 27.001(7)(D) as a basis for application of the Act. Therefore, we do not address Appellants' contention that Thompson is a limited-purpose public figure in assessing whether the allegedly defamatory statements fall within the purview of the TCPA.

10

could not rely on attorney-client relationship to bridge evidentiary gap and failed to meet burden under section 27.005(b)(3)). We conclude that Appellants have met their burden to show by a preponderance of the evidence that Thompson's action is based on, relates to, or is in response to Appellants' right of association as to the written and oral statements made to Sunchase HOA members.[6] *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1); *Farias*, 426 S.W.3d at 813; *Sheffield*, 2014 Tex. App. LEXIS 1098, at *13–14.

Appellants have also met their burden to show that the statements Neyland, Sinclair, and Watts made to the television reporter fall within the scope of the TCPA. One of the bases Appellants assert for application of the TCPA to their statements is that they were communications relating to community well-being. *See* Tex. Civ. Prac. & Rem. Code § 27.001(3), (7)(B). Neyland,

---

[6] Appellants have also met their burden to show by a preponderance of the evidence that, as to some of these statements, Thompson's action is based on, relates to, or is in response to Appellants' exercise of the right of free speech. The written statements in the flyers and petition and the oral statements to Sunchase homeowners concern Thompson's performance as property manager for Sunchase HOA. Thompson's pleadings and affidavit testimony establish that she performed property management services to the HOA through Nancy Thompson Management, a sole proprietorship, not as an employee of the HOA, and that she simultaneously offered her services to more than one homeowners association. Thus, the evidence shows that the written and oral statements to Sunchase residents, with the exception of the email statements, were made in connection with Appellants' exercise of the right of free speech concerning a matter of public concern—Thompson's property management services offered in the marketplace—and the Act applies to these statements on this basis as well. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)(1); *BH DFW*, 402 S.W.3d at 307–08 (where Better Business Bureau established its business review related to good, product, or service in marketplace, action fell within scope of TCPA); *John Moore Servs.*, 441 S.W.3d at 354 (where Better Business Bureau presented evidence action was based on its expression of opinions regarding quality of John Moore's goods and services, it established action was related to matter of public concern under Act); *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, pet. denied) (allegedly defamatory statements made in television broadcast concerning Larrea's legal services constituted exercise of right of free speech in connection with matter of public concern and Act applied).

11

Sinclair, and Watts made these statements in connection with a reporter's investigation of alleged misappropriation of Sunchase HOA funds and possible fraud, which could potentially damage the revenues of the HOA and interfere with its ability to pay common expenses and maintain common elements. Thus, the statements relate to the HOA's "economic or community well-being," issues which are included in the statutory definition of "matter of public concern" under the TCPA. *See id.*; *Schimmel v. McGregor*, 438 S.W.3d 847, 858–59 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (statements by attorney for homeowners association to reporter and association board in connection with dispute among homeowners concerning matters that would allegedly damage property values and association's future revenue stream related to "economic and community well-being" within meaning of TCPA's definition of "matter of public concern"). We conclude that Appellants have shown by a preponderance of the evidence that Thompson's action as to the statements Neyland, Sinclair, and Watts made to the television reporter is based on, relates to, or is in response to their exercise of the right of free speech as defined in the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.001(3), (7)(B), (E), .005(b)(1); *Farias*, 426 S.W.3d at 813; *Schimmel*, 438 S.W.3d at 858–59. Because Appellants have met their burden to show that the TCPA applies to their allegedly defamatory statements, the burden shifted to Thompson to present a prima facie case.

## PRIMA FACIE CASE

We turn, then, to the second step in our inquiry—whether Thompson has demonstrated by clear and specific evidence a prima facie case for each essential element of her claims for libel per se and slander per se.

12

**Elements of Defamation**

Libel is defamation expressed in written or other graphic form. Tex. Civ. Prac. & Rem. Code § 73.001; *Neely v. Wilson*, 418 S.W.3d 52, 60 (Tex. 2013). "Slander, the spoken form of defamation, is not codified, but has been recognized at common law . . . ." *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex. 1994). To maintain a defamation cause of action, a plaintiff must prove that the defendant (1) published a statement, (2) that was defamatory concerning the plaintiff, (3) while acting with either malice, if the plaintiff was a public official, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Newspaper Holdings*, 416 S.W.3d at 81–82; *Rehak*, 404 S.W.3d at 727.

Whether statements are defamatory is a question of law subject to de novo review. *Rehak*, 404 S.W.3d at 728–29; *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 581 (Tex. App.—Austin 2007, pet. denied). A statement is defamatory when, in light of the surrounding circumstances, a person of ordinary intelligence would interpret it in a way that tends to injure the subject's reputation and thereby expose the subject to public hatred, contempt, or ridicule, or financial injury, or to impeach the subject's honesty, integrity, virtue, or reputation. Tex. Civ. Prac. & Rem. Code § 73.001; *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000); *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987); *Rehak*, 404 S.W.3d at 728. If the statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law, and the claim fails. *Hancock v. Variyam*, 400 S.W.3d 59, 66 (Tex. 2013). Some statements are so obviously injurious to a plaintiff's

reputation that they require no proof of injury to make them actionable, and general damages are presumed; such statements are considered defamatory per se. *Id.* at 63–64; *Texas Disposal*, 219 S.W.3d at 581. A statement will typically be classified as defamatory per se if it injures a person in his office, profession, or occupation, *Hancock*, 400 S.W.3d at 64; *Farias*, 426 S.W.3d at 815; *Texas Disposal*, 219 S.W.3d at 581, or charges a person with the commission of a crime, dishonesty, fraud, rascality, or general depravity, *Robinson*, 409 S.W.3d at 690; *Texas Disposal*, 219 S.W.3d at 581. With regard to a statement concerning a person's profession or occupation, "[t]he proper inquiry is whether a defamatory statement accuses a professional of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession." *Hancock*, 400 S.W.3d at 67 (citing Restatement (Second) of Torts § 573 cmts. c, e).

**Limited-Purpose Public Figure**

Appellants contend that Thompson is a limited-purpose public figure. Limited-purpose public figures are public figures only for a limited range of issues surrounding a particular public controversy. *McLemore*, 978 S.W.2d at 571. They are persons who "'thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. . . . inviting attention and comment,' who 'inject[] themselves or [are] drawn into a particular public controversy . . . . assum[ing] special prominence in the resolution of public questions,' 'thrusting [themselves] into the vortex of [a] public issue . . . [or] engag[ing] the public's attention in an attempt to influence its outcome.'" *Klentzman v. Brady*, 312 S.W.3d 886, 904 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)).

14

To determine whether an individual is a limited-purpose public figure, the supreme court has adopted a three-part test: "(1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution; (2) the plaintiff must have more than a trivial or tangential role in the controversy; and (3) the alleged defamation must be germane to the plaintiff's participation in the controversy." *McLemore*, 978 S.W.2d at 571–72 (applying "generally accepted test" adopted by Fifth Circuit in *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987)). Whether a person is a limited-purpose public figure is a question of law for the court to decide. *Klentzman*, 312 S.W.3d at 904 (citing *Rosenblatt v. Baer*, 383 U.S. 75, 88 (1966)).

Appellants contend they have met all three elements of the *Trotter* test. We disagree. Even if we were to assume a "public controversy" existed, Appellants have not shown that Thompson had more than a trivial or tangential role in the controversy. *See McLemore*, 978 S.W.2d at 571; *Klentzman*, 312 S.W.3d at 904. To determine whether an individual had more than a trivial or tangential role in the controversy, a court should consider: whether the plaintiff (1) actively sought publicity surrounding the controversy; (2) had access to the media; and (3) voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation. *McLemore*, 978 S.W.2d at 572–73; *Klentzman*, 312 S.W.3d at 905. A private person does not become a public figure merely because he is discussed in the media. *Klentzman*, 312 S.W.3d at 905 (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)). A defamation defendant "must show more than newsworthiness to justify application of the demanding burden of [actual malice]." *Id.* at 906 (quoting *Hutchinson*, 443 U.S. at 135). "'[T]hose charged with defamation cannot, by their

15

own conduct, create their own defense by making the claimant a public figure.'" *Id.* at 905 (quoting

*Hutchinson*, 443 U.S. at 135). Moreover, involuntary public figures are rare. *See Gertz*, 418 U.S.

at 345. In the words of the U.S. Supreme Court,

> Hypothetically, it may be possible for someone to become a public figure through no
> purposeful action of his own, but the instances of truly involuntary public figures
> must be exceedingly rare. . . . More commonly, those classed as public figures have
> thrust themselves to the forefront of particular public controversies in order to
> influence the resolution of the issues involved. [T]hey invite attention and comment.

*Id.* Neither the U.S. Supreme Court nor the Texas Supreme Court has found circumstances in which

a person involuntarily became a limited-purpose public figure. *Neely*, 418 S.W.3d at 71. Like the

supreme court in *Neely*, we decline to do so here. *See id.*

Appellants have not shown that Thompson actively sought publicity, had access to

the media, or voluntarily acted so as to risk exposure and injury to her reputation. *See Klentzman*,

312 S.W.3d at 906–07 (where evidence showed only that plaintiff's father was public official,

plaintiff was not limited-purpose public figure). Rather, the record shows that Thompson was not

quoted in the television reports and, when contacted by the reporter, declined comment. There is no

evidence that she appeared at the HOA board meeting at which the allegedly defamatory comments

were made or responded to any statements Appellants made in the emails, flyers, and petition. In

short, there is no evidence that she thrust or injected herself into the controversy or invited attention

and comment.[7] *See id.*; *cf. McLemore*, 978 S.W.2d at 573 (journalist who reported live from scene

_____

[7] To the extent Appellants argue that because Thompson sought and obtained a job as a
property manager, she thrust herself into the subsequent controversy, we reject the contention that
seeking and obtaining employment meets the *Gertz* standard. *See Gertz v. Robert Welch, Inc.*,

16

and later spoke with other members of press about his coverage and role in assisting wounded acted voluntarily to invite attention and scrutiny). We do not find this to be the "exceedingly rare case" in which a person has become a limited-person figure against her will. *See Gertz*, 418 U.S. at 345; *Neely*, 418 S.W.3d at 71–72 (declining to find disciplined doctor, who was mentioned in two newspaper articles but not quoted in either and who declined to speak to reporter about television report, was limited-purpose public figure). Because Thompson is not a limited-purpose public figure, she must prove only negligence, not actual malice, in meeting her burden to demonstrate by clear and specific evidence a prima facie case for each essential element of her claims for libel per se and slander per se under section 27.005(c). *See Neely*, 418 S.W.3d at 60; *McLemore*, 978 S.W.2d at 571.

**Application of the Elements of Defamation to the Facts**

Appellants do not dispute that they made the statements alleged to be defamatory.[8] We therefore consider only the second and third elements—whether the statements defamed Thompson and whether Appellants acted negligently regarding the truth of the statements. *See McLemore*, 978 S.W.2d at 571; *Newspaper Holdings*, 416 S.W.3d at 81–82; *Rehak*, 404 S.W.3d at 727. We address the four categories of statements in turn.

---

418 U.S. 323, 342 (1974).

[8] Appellants state that they dispute that they made any *defamatory* statements against Thompson, but in their affidavits state only that they acted in good faith and never harbored any serious doubts about the truth of the statements they made. They have offered no argument, authority, or evidence that they did not make the statements attributed to them, and to the extent they contend that they did not make the statements at issue, they have waived that argument. *See* Tex. R. App. P. 38.1(i).

17

***Emails to Sunchase Homeowners***

The emails in evidence contain statements by Watts regarding her concerns about "this situation" and her thoughts that HOA board member Mims "will do the right thing." Sinclair refers to their being in a "holding pattern" and wanting Thompson "to shake in her boots." There is nothing intrinsically defamatory about these statements. There are no comments about Thompson's profession or occupation, *see Hancock*, 400 S.W.3d at 64, and they do not say or imply that Thompson committed a crime or was guilty of dishonesty, fraud, rascality, or general depravity, *see Robinson*, 409 S.W.3d at 690; *Texas Disposal*, 219 S.W.3d at 581. Rather, the emails express Watts's and Sinclair's thoughts in such vague terms that, even read in the context of the HOA dispute, there is nothing defamatory about Thompson. In fact, the only reference to Thompson is Sinclair's statement indicating that she wanted Thompson to be nervous.

We do not believe that a person of ordinary intelligence would interpret these statements in a way that tends to injure Thompson's reputation. *See* Tex. Civ. Prac. & Rem. Code § 73.001; *Hancock*, 400 S.W.3d at 66 (statements that doctor lacked veracity and dealt in half-truths not defamatory per se because they did not injure him in profession as physician; trait of truthfulness not peculiar or unique to being a physician); *Rehak*, 404 S.W.3d at 729–30; *Robinson*, 409 S.W.3d at 691 (finding statements concerning insufficiency of financial records but not alleging misappropriation or embezzlement not defamatory per se). Thus, these email statements are not defamatory as a matter of law. *See Hancock*, 400 S.W.3d at 66; *Musser*, 723 S.W.2d at 655 (complained-of statement merely called plaintiff strong and successful competitor and was not defamatory as matter of law). Consequently, Thompson has not produced the minimum quantum

18

of clear and specific evidence necessary to support a rational inference that the email statements were defamatory and has failed to establish a prima facie case for each essential element of her claim for libel per se as to these statements. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *In re DuPont*, 136 S.W.3d at 223; *Farias*, 426 S.W.3d at 814; *Rehak*, 404 S.W.3d at 732. We conclude the trial court erred in denying Appellants' motion to dismiss as to the email statements. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *Rehak*, 404 S.W.3d at 729–30, 732 (where statements were merely rhetorical hyperbole, not defamatory, dismissal was appropriate); *John Moore Servs.*, 441 S.W.3d at 356–58 (statements that John Moore Services not accredited and not rated not actionable defamatory statements, and trial court erred in denying motion to dismiss).

### *Flyers and Petition Distributed to Sunchase Homeowners*

The flyers include statements that Thompson is incompetent, breached her contract, misappropriated funds, disregarded the law, and has been fired from three other homeowners associations for mismanagement of funds, one of which sued and obtained a money judgment. The petition Appellants circulated alleged that Thompson had failed to comply with the HOA bylaws' requirement that an annual audit be performed. The record shows that Thompson operated a property management business under the name Nancy Thompson Management and performed accounting and other financial services for the Sunchase HOA and at least one other condominium homeowners association at the time the flyers were distributed. In the context of this HOA dispute, we believe a person of ordinary intelligence would have understood these statements to mean that Thompson had actually performed incompetently; violated the law, including by engaging in misappropriation of HOA funds, both at Sunchase and elsewhere; and been fired for similar conduct

19

at previous jobs. *See* Tex. Civ. Prac. & Rem. Code § 73.001; *Turner*, 38 S.W.3d at 114–15; *Musser*, 723 S.W.2d at 654–55; *Rehak*, 404 S.W.3d at 728. These statements accuse Thompson of incompetence in skills necessary to her profession, as well as dishonesty, and fraudulent—even criminal—conduct in her professional activities and adversely reflect on her fitness for her chosen profession. Accordingly, these statements injure Thompson in her profession, accuse her of dishonest, fraudulent, and criminal conduct, and are defamatory per se.[9] *Hancock*, 400 S.W.3d at 63–64, 67; *Farias*, 426 S.W.3d at 815; *Robinson*, 409 S.W.3d at 690; *Texas Disposal*, 219 S.W.3d at 581.

We next consider whether Thompson has shown the third element of her libel claim based on the statements in the flyers and petition. Because we have concluded that Thompson is not a limited-purpose public figure, her burden is to establish that Appellants acted negligently with regard to the truth of the statements. *See McLemore*, 978 S.W.2d at 571; *Newspaper Holdings*, 416 S.W.3d at 81–82; *Rehak*, 404 S.W.3d at 727. "Negligent conduct is determined by asking 'whether the defendant acted reasonably in checking the truth or falsity or defamatory character of the communication before publishing it.'" *Scripps Tex. Newspapers, L.P. v. Belalcazar*, 99 S.W.3d 829, 837 (Tex. App.—Corpus Christi 2003, pet. denied) (quoting Restatement (Second) of Torts § 580B cmt. g).

---

[9] Appellants argue that these statements cannot be defamatory because they are based on the same conduct for which another homeowners association sued Thompson and obtained a default judgment. However, they offer no authority for this argument and have therefore waived it. *See* Tex. R. App. P. 38.1(i). While we conclude below that the true statement that such a suit and judgment exist is not defamatory, that does not mean that the statements at issue in this lawsuit cannot be defamatory.

20

With regard to the statement that one of the homeowners associations for which Thompson had previously worked sued and obtained a money judgment against her, the record shows that the statement is true. The evidence includes (1) a small claims court petition filed by a homeowners association against Thompson for funds lost, spent without authorization, and spent for items not purchased for the homeowners association and (2) a default judgment against Thompson. Because the record contains no evidence that the statement was false, Thompson has not produced the minimum quantum of clear and specific evidence necessary to support a rational inference that Appellants acted negligently with regard to the truth of this statement and has thus failed to establish a prima facie case for each essential element of her claim for libel per se as to this statement. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *In re DuPont*, 136 S.W.3d at 223; *McLemore*, 978 S.W.2d at 571; *Farias*, 426 S.W.3d at 814; *Newspaper Holdings*, 416 S.W.3d at 81–82, 84. We therefore conclude that the trial court erred in denying Appellants' motion to dismiss as to this statement. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *Newspaper Holdings*, 416 S.W.3d at 84, 86 (where there was no evidence to counter showing statement was substantially true, plaintiff did not make prima facie case of defamation); *Avila v. Larrea*, 394 S.W.3d 646, 662 (Tex. App.—Dallas 2012, pet. denied) (where there was no evidence allegations were reported inaccurately and no evidence of falsity, trial court erred in denying motion to dismiss under section 27.005).

As for the remainder of the statements in the flyers and petition, we conclude that Thompson has met her burden to show by clear and specific evidence that Appellants acted with negligence with regard to the truth of the statements. In her uncontradicted affidavit, Thompson avers that she never stole anything from the HOA, she never had signatory authority over the HOA

bank account, all checks were signed by a board member and not her, a board member reviewed every withdrawal the entire time she was property manager, she has never been fired from a homeowners association for misappropriation of funds, she was still working for one of the condominium associations from which Appellants alleged she has been fired at the time of the allegation, she had witnessed board members telling Appellants there was no evidence that she had stolen anything, and Appellants did not review the HOA bank records before stating that she "stole" from the HOA and was a "thief." Thompson offered a copy of a May 2012 letter from the HOA board to its members informing them that the board was not aware of any embezzlement or wrongdoing on the part of Thompson and that it was not Thompson's responsibility to conduct audits. Thompson also produced a copy of the Sunchase Condominium bylaws, which specify that the HOA board treasurer, not the property manager, is responsible for coordinating the annual audits, keeping true and accurate financial records, ensuring that all accounts are kept under the sole control of the board, and signing all disbursement checks, which require three board members' signatures.

We believe that this evidence constitutes clear and specific evidence that the statements were false and that Appellants acted with negligence with regard to the truth of the statements. There is no evidence to counter Thompson's showing, supported by details, that the statements were false. *Cf. Alphonso v. Deshotel*, 417 S.W.3d 194, 198 (Tex. App.—El Paso 2013, no pet.) (where plaintiff did not testify he did not misappropriate funds, only that statements he did were false and defamatory, he failed to produced clear and specific evidence of prima facie case statements were false). Further, the record shows that, as HOA members, Appellants had access to HOA bylaws and records, which they could have reviewed to check the truth or falsity of their claims

22

prior to making any accusation of incompetence, theft, or other wrongdoing. Although there is evidence that Appellants were frustrated in attempts to obtain records from the HOA board, the record also shows that Appellants did not refrain from making these statements about Thompson until they had obtained and reviewed the records so as to ascertain the truth or falsity of their suspicions and allegations.[10] The evidence also establishes that prior to at least some of these statements, the HOA board members' explanations to Appellants and the board's May 2012 letter to the members expressly informed Appellants that there was no evidence of any wrongdoing on the part of Thompson and that under the bylaws, which were available to appellants, it was not her responsibility to ensure that annual audits were performed. The record further shows that Appellants investigated Thompson's prior employment history sufficiently to name the condominium associations where she previously worked but did not offer any evidence of the alleged firings and failed to discover or ignored that at the time of this allegation, Thompson was still working for one association from which Appellants alleged she has been fired.

On this record, we conclude that Thompson has produced the minimum quantum of clear and specific evidence necessary to support a rational inference that the statements were false and that Appellants acted with negligence with regard to the truth of the statements. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *In re DuPont*, 136 S.W.3d at 223; *McLemore*, 978 S.W.2d at 571; *Farias*, 426 S.W.3d at 814; *French v. French*, 385 S.W.3d 61, 74 (Tex. App.—Waco 2012, pet. denied) (plaintiff who presented evidence that defendant failed to investigate alleged missing money,

---

[10] In fact, the first flyer, which contains numerous allegations against Thompson, also includes Appellants' complaint that they had been unable to obtain the records necessary to substantiate their suspicions and allegations.

23

other than to confront plaintiff who denied it, and had other information indicating plaintiff was not involved raised fact issue as to whether defendant acted with negligence); *KBMT Operating Co. v. Toledo*, 434 S.W.3d 276, 290 (Tex. App.—Beaumont 2014, pet. granted) (where gist of news broadcast was based on documents that did not suggest what was reported, media defendants acted negligently in reporting); *cf. Newspaper Holdings*, 416 S.W.3d at 86 (where plaintiff provided no evidence that defendant should have investigated more fully, he did not show by clear and specific evidence that report was false or negligently reported). Therefore, we further conclude that Thompson has established by clear and specific evidence—evidence "that will entitle [Thompson] to recover if no evidence to the contrary is offered by [Appellants]"—each essential element of her libel per se claims as to the statements in the flyers and petition other than the statement concerning the suit and default judgment against Thompson. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b), (c); *In re DuPont*, 136 S.W.3d at 223; *McLemore*, 978 S.W.2d at 571; *Farias*, 426 S.W.3d at 814. Therefore, the trial court did not err in denying Appellants' motion to dismiss as to these claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *Toledo*, 434 S.W.3d at 290.

### Oral Statements to Sunchase Residents

The oral statements to Sunchase residents alleged to be defamatory are that Thompson is a "thief," was "stealing Association money," and has been "fired from previous property management jobs for misappropriating funds." For the same reasons we have concluded that the statements in the flyers and petition were defamatory per se, we also conclude that these statements injure Thompson in her profession, accuse her of dishonest, fraudulent, and criminal conduct, and are defamatory per se. *See Hancock*, 400 S.W.3d at 63–64, 67; *Farias*, 426 S.W.3d at 815;

24

*Robinson*, 409 S.W.3d at 690; *Texas Disposal*, 219 S.W.3d at 581. Similarly, for the same reasons that we have concluded that Thompson has produced the minimum quantum of clear and specific evidence necessary to support a rational inference that the statements in the flyers and petition—other than the statement concerning the suit and default judgment against Thompson—were false and that Appellants acted negligently with regard to the truth or falsity of those statements, we conclude that she has made the same showing as to these oral statements to Sunchase residents. *See French*, 385 S.W.3d at 74; *Toledo*, 434 S.W.3d at 290. Thus, we conclude that Thompson has established by clear and specific evidence a prima facie case for each essential element of her slander per se claims as to the oral statements made to Sunchase residents and the trial court did not err in denying Appellants' motion to dismiss as to these claims. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *In re DuPont*, 136 S.W.3d at 223; *McLemore*, 978 S.W.2d at 571; *Farias*, 426 S.W.3d at 814; *Toledo*, 434 S.W.3d at 290.

### Oral Statements to Reporter

The only evidence of the statements Neyland, Sinclair, and Watts made to the television reporter is contained in Appellants' affidavits. Neyland, Sinclair, and Watts aver that they told the reporter the HOA board and property management would "not respond," the HOA board had been uncooperative, something was "just not right," they "wished [they] knew what was going on," "something [was] going on," they "hope[d] to find out what it is," and they had wanted to vote on replacement of the board but were "quashed." Viewing these statements as a whole and in context, we do not believe that a person of ordinary intelligence would perceive them as defamatory to Thompson's reputation. *See* Tex. Civ. Prac. & Rem. Code § 73.001; *Rehak*, 404 S.W.3d at 729–30.

25

They do not allege that Thompson lacks the skills to perform her professional duties, *see Hancock*, 400 S.W.3d at 67, or charge her with the commission of a crime, dishonesty, fraud, rascality, or general depravity, *see Robinson*, 409 S.W.3d at 690; *Texas Disposal*, 219 S.W.3d at 581. In fact, the statements as a whole are more critical of the HOA board than of Thompson and are as much statements of opinion as of fact. *See John Moore Servs.*, 441 S.W.3d at 357–58 (Better Business Bureau's "F" rating not defamatory because it was opinion that lacked high degree of verifiability). Therefore, these statements to the reporter are not defamatory as a matter of law. *See Hancock*, 400 S.W.3d at 66; *Musser*, 723 S.W.2d at 655.

Because Thompson has not produced the minimum quantum of clear and specific evidence necessary to support a rational inference that the statements to the reporter were defamatory, she has failed to establish a prima facie case for each essential element of her claim for slander per se as to these statements. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *In re DuPont*, 136 S.W.3d at 223; *McLemore*, 978 S.W.2d at 571; *Farias*, 426 S.W.3d at 814; *Rehak*, 404 S.W.3d at 732. Therefore, the trial erred in denying Appellants' motion to dismiss as to Neyland's, Sinclair's, and Watts's oral statements to the reporter. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c); *Rehak*, 404 S.W.3d at 729–30, 732; *John Moore Servs.*, 441 S.W.3d at 357–58, 362.

## CONCLUSION

We affirm the trial court's denial of Appellants' motion to dismiss Thompson's claims that Appellants defamed her through their written statements in the flyers—with the exception of the statement concerning the suit and default judgment against Thompson—and the petition and their oral statements to Sunchase residents. We conclude that Thompson made the requisite

26

prima facie showing as to those claims. We reverse and render dismissal of Thompson's claims as to the email statements to Sunchase residents, the statement in the flyers concerning the suit and default judgment against Thompson, and the statements to the television reporter, having concluded that Thompson did not make the required prima facie showing as to those claims. The case may proceed in the trial court consistent with our resolution of these issues on interlocutory appeal.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in Part; Reversed and Dismissed in Part;
   Concurring Opinion by Justice Field

Filed:   April 7, 2015